# Kaine *versus* Weigley.

1. The proposition that "fraud must be proved and not presumed," is to be
understood only as affirming that a contract honest and lawful on its face,
must be treated as such until it is shown to be otherwise by evidence either
positive or circumstantial.   Fraud may be inferred from facts calculated to
establish it.

2. Where the consideration money, specified in a conveyance of real estate
made by an insolvent, was not paid at the time of the conveyance, it was the
duty of the grantee, in an ejectment by one claiming as purchaser at a sheriff's
sale subsequent to such conveyance, to show that such consideration money
was afterwards paid—that it was a full price for the property and that the
same was not purchased with an intent to hinder or defraud creditors.

ERROR to the Common Pleas of *Fayette county.*

This was an ejectment by Daniel Kaine *v.* Alexander Weigley,
and Alexander Stewart and Isabella Stewart his wife, for a house
and lot of ground.

Both parties claimed under George G. Neal.   In the spring of
1848, George G. Neal and John D. Scott, doing business in the
name of Neal & Scott, commenced merchandising at Morris Cross
Roads, in Fayette county, and bought their goods on credit princi-
pally in Baltimore.   They became involved, and in December of that
year failed.   On the 15th of December, 1848, a judgment was entered
against them in favor of Ford, Stannard & Co., of Baltimore, for

[Kaine *v.* Weigley.]

$1063.48; and on the same day another judgment was entered against them in favor of Morris & Searight for $600. These judgments were given for debts previously contracted. On these two judgments (amounting, including debt, interest, and cost, to about $1700), executions were issued and all their personal property (consisting of store goods) was levied on and sold for about $1301.94. They owned a lot of ground at Morris Cross Roads, upon which, about the time they commenced keeping store, they built a store house, which cost from two to three hundred dollars. This was paid for principally out of the store. The house was occupied by them as a store room until their goods were sold by the sheriff in December, 1848. This house and lot George G. Neal conveyed to his brother-in-law, Alexander Stewart, and his sister Isabella Stewart (wife of the said Alexander), by deed dated Dec. 7, 1848, when he was in debt and insolvent. The consideration of this deed was stated to be two hundred and fifty dollars; under it they were in possession of, and claimed the property.

On the 1st of January, 1849, King & Carey obtained a judgment against Neal & Scott for $111, upon which a *fi. fa.* was issued and levied upon the house and lot. Under this judgment the property was sold by the sheriff on the 4th of March, 1850, to Daniel Kaine, who took the deed in his own name for the benefit of his clients, King & Carey, who were merchants in Baltimore. Alexander Weigley was the tenant of Stewart and wife.

On the part of the defence was shown the will of Isabella Neal, in which she devised to Isabella Neal, her daughter, $100, and appointed George G. Neal her executor. The will was proved 27th January, 1842.

Also deed from Lyons and wife to George G. Neal, dated April 1, 1848, for the lot in dispute—consideration $100.

Also deed from George G. Neal to Alexander Stewart and Isabella his wife, for $250, dated December 7, 1848, for the property in dispute.

A witness called by the *defendants*, said: "I went to Stewart's and wrote out the deed; signed it as a witness that night; no other person there." When the deed was handed over, Neal said, you will give up the note. Mrs. Stewart went into the room and came out with one paper and some money rolled up in her hand, and laid both down on the table. Neal picked up the paper and said, "This is my note," and put it into his pocket and said, "Squire, count out the money." I picked up the money and counted; there was fifty dollars. Neal took the money. I had not the note in my hand; there was but one paper."

On part of the *plaintiff*, it was testified that the property was worth from three to four hundred dollars. The plaintiff claimed

[Kaine v. Weigley.]

to recover the property on the ground that the conveyance by Neal was fraudulent as to his creditors, and therefore void; and it was contended that the defendants were bound to show that the conveyance was fair and honest, and that the consideration mentioned in it had been paid.

GILMORE, President J., charged, *inter alia*, as follows:

"It is also contended that the conveyance of George G. Neal to Alexander Stewart and Isabella his wife (the real defendants), dated 7th December, 1848, is fraudulent and void, being voluntary and without consideration, and made to defraud creditors. The question of fraud in this case is one of fact, and for your determination. There can be no question but that Neal was indebted, and largely so, when he made the conveyance, *and if it is without consideration, such as is expressed in the deed,* it would be fraudulent *and void.* Is, then, the declaration in the deed, that the grantor received the consideration therein expressed, true, or is it false? We have said that fraud would destroy the deed, and make it void and of no effect. This being the important consequence of fraud, it is also held, and juries are always instructed, as we now instruct you, that it must be proved, and cannot be presumed or surmised. That is, you must be satisfied of its existence, not merely suspect it. In other words, you must be able to say, under your oaths— to swear in fact to its existence.

"You must be so well satisfied as to be able to swear that the consideration money of two hundred and fifty dollars, mentioned in the deed from George G. Neal to Stewart and wife was not paid, otherwise the defendants will be entitled to your verdict."

It was assigned for error, that the Court erred in charging, "If it (the deed) is without consideration, such as is expressed in the deed, it would be fraudulent and void."

2. In charging, "In other words, you must be able to say under your oaths—to swear in fact to its existence;" and also to the next following paragraph in the charge as printed.

*Kaine,* with whom was *Ewing,* for plaintiff in error.—It was said that as the statute of Elizabeth avoided all conveyances made *with intent to defraud creditors,* the payment of the consideration money, if it had been paid, would not validate the deed if the parties to it designed to commit a fraud upon the creditors of the grantor: 3 *Watts* 230, McKee v. Gilchrist; 11 *Ser. & R.* 328; *Cowper* 434.

The doctrine that *fraud* must be proved, not presumed, is subject to the qualification that it may be established, like other facts, by presumptive evidence: 4 *Watts* 360, Rogers v. Hall; 4 *Harris* 488, Zerbe v. Miller; 1 *Rawle* 349, Geiger v. Welsh.

Q

[Kaine *v.* Weigley.]

As to the second assignment was cited Rogers *v.* Hall, also Zerbe *v.* Miller, and Lloyd *v.* Williams (9 *Harris* 327).

*Veech,* contrà.

The opinion of the Court was delivered by

BLACK, C. J.—This was an ejectment for a house and lot formerly owned by one Neal, under whom both parties claim. Neal conveyed it to his sister and her husband, the defendants in this cause, before judgments were entered up against him, but after he had become hopelessly insolvent. His creditors afterwards caused it to be sold for their debts, and the plaintiff, making title through a sheriff's deed, avers that the previous conveyance was fraudulent and void.

One who has a *bonâ fide* debt against an insolvent man, may take property at a fair price in payment of it, without danger of having his title afterwards impeached. But when a person in failing circumstances sells land to one who is not his creditor, his motives are suspicious, for he can, if he pleases, put the money out of reach, and defeat those who are entitled to it. If the vendee knows that such is the vendor's purpose, he must take the consequences in the loss of his title, though he has paid an outside price for it. When it is sold either in payment of a debt or for cash at a price considerably below its real value, the conveyance may be impugned by creditors without proof of more than the vendee's knowledge that the vendor was indebted. In such a case the parties cannot choose but know, that the creditors are cheated to the extent of the difference between the price and the value; and the transaction being touched with fraud is tainted throughout. If the transfer is made without any consideration at all, it is nakedly fraudulent, and it requires no evidence beyond that fact alone to overthrow it.

In the present case it is alleged, that the conveyance was made when both parties knew the vendor to be insolvent; that the grantees were a brother-in-law and a sister of the grantor; that the consideration stated in the deed was less than the value of the land by twenty or twenty-five per cent. ; that, of the sum, which was said to be the price, only fifty dollars were paid when the deed was delivered, and that amount was handed to the grantor by his sister after they had gone together into a private room, from whence she returned with the money in her hand. I say these facts are alleged. I do not say that they were fully proved, or that if proved, the jury were bound to infer from them any actual dishonesty. But if true, they make out a very serious case, which ought to be submitted with no instructions tending to prevent a verdict for the plaintiff, unless the jury should be able to explain the

[Kaine *v.* Weigley.]

evidence in some way consistently with the fairness of the transaction.

It is said that fraud must be proved, and is never to be presumed. This proposition can be admitted only in a qualified and very limited sense. But it is often urged at the bar, and sometimes assented to by judges, as if it were a fundamental maxim of the law, universally true, incapable of modification, and open to no exception: whereas it has scarcely extent enough to give it the dignity of a general rule; and, as far as it does go, it is based on a principle which has no more application to frauds than to any other subject of judicial inquiry. It amounts but to this: that a contract, honest and lawful on its face, must be treated as such until it is shown to be otherwise by evidence of some kind, either positive or circumstantial. It is not true that fraud can *never* be presumed. Presumptions are of two kinds, *legal* and *natural*. Allegations of fraud are sometimes supported by one and sometimes by the other, and are seldom, almost never, sustained by that direct and plenary proof which excludes all presumption. A sale of chattels without delivery, or a conveyance of land without consideration, is conclusively presumed to be fraudulent as against creditors, not only without proof of any dishonest intent, but in opposition to the most convincing evidence that the motives and objects of the parties were fair. This is an example of fraud established by mere presumption of law. A natural presumption is the deduction of one fact from another. For instance: a person deeply indebted, and on the eve of bankruptcy, makes over his property to a near relative, who is known not to have the means of paying for it. From these facts a jury may infer the fact of a fraudulent intent to hinder and delay creditors. A presumption of fraud is thus created, which the party who denies it must repel it by clear evidence, or else stand convicted. When creditors are about to be cheated, it is very uncommon for the perpetrators to proclaim their purpose, and call in witnesses to see it done. A resort to presumptive evidence, therefore, becomes absolutely necessary to protect the rights of honest men from this, as from other invasions. Upon such evidence the highest criminal punishments are inflicted, and the most important rights of property constantly determined. Fraud in the transfer of goods or lands may be shown by the same amount of proof which would establish any other fact, in its own nature as likely to exist. In any case, the number and cogency of the circumstances, from which guilt is to be inferred, are proportioned to the original improbability of the offence. The frequency of fraud upon creditors, the supposed difficulty of detection, the powerful motives which tempt an insolvent man to commit it, and the plausible casuistry with which it is sometimes reconciled to the consciences even of persons whose previous lives have

[Kaine *v.* Weigley.]

been without reproach; these are the considerations which prevent us from classing it among the grossly improbable violations of moral duty; and therefore we often presume it from facts which may seem slight. Besides, when a man, who knows himself unable to pay his debts, disposes of his property for a just purpose, he can easily make and produce the clearest evidence of its fairness. If he sells for the benefit of his creditors, he can prove that he applied the proceeds to their use. It is no hardship upon an honest man to require a reasonable explanation of every suspicious circumstance, and rogues are not entitled to a veto upon the means employed for their detection.

We do not propose to say how much evidence is required to raise a presumption of actual fraud, either in this case or any other. The jury must weigh, on one hand, the facts which are adduced to prove it, and on the other, the nature of the accusation and the improbability of its truth arising from reasons *a priori*, together with the exculpatory facts, and then decide according as they find the preponderance to be. If the reasons *pro* and *con* are so evenly balanced that they can come to no conclusion, they must find the transaction honest, not upon the principle of the criminal law which gives the benefit of every doubt to the party accused, but because the burden of proof was on the other party at the start; and if he has done no more than create an equilibrium, he has failed to make out his case.

When the judge of the Common Pleas said that fraud was not to be presumed, he was right only if he meant that, in such a case as this, the law would not presume it from the naked transaction, without reference to any attendant facts. But it might be understood as an instruction that the jury could not infer it from the evidence which had been given. There was error in this, as well as in the concluding part of the charge where, according to our construction of it, the Court relieved the defendants from the burden of explaining the circumstances attending the transfer of the property, and threw it too heavily on the plaintiff. If the consideration mentioned in the deed was not paid at the time the deed was delivered, it became the duty of the defendant to show that it was paid afterwards; that it was a full price, and that it was agreed upon with no intent either to hinder, delay, or defraud creditors.

Judgment reversed and a *venire facias de novo* awarded.