Kizzie Lehr, Appellant, *v.* Andrew R. Brodbeck.

*Sale—Contract—Change of possession.*

Where a brother and sister live upon a farm, and the brother incurs a debt to the sister which he pays by giving her a bill of sale of all his personal property upon the farm, but without in any manner making manifest the change of ownership, the sale is constructively fraudulent as to the brother's creditors, although there may have been no intentional fraud in the sale itself.

*Practice, C. P.—New trial—Discretion of court.*

On an issue to determine the ownership of goods taken in execution the undisputed evidence was that certain of the goods belonged to the plaintiff, and that as to the rest the plaintiff held under a bill of sale which was constructively a fraud upon the original owner's creditors. The court charged that plaintiff was entitled to recover the value of the goods as to which her ownership was undisputed. The jury, however, returned a general verdict for defendant. Subsequently, on a rule for a new trial, defendant offered to pay an amount less than the alleged value of the goods about which there was no dispute, and the court thereupon directed that upon proof of tender to plaintiff, of that amount and costs, in full settlement of her claim, and her refusal to accept it, the new trial would be refused. The tender was refused, and the court overruled the motion for a new trial, and directed judgment for defendant with costs. *Held,* (1) that the order was an improper exercise of the discretion of the court; (2) that it was error to require plaintiff to accept a specified sum, " in full settlement of her claims," since an acceptance would deprive her of the right to a review of so much of the decision as related to the property to the value of which the court held she was not entitled.

Argued May 17, 1899. Appeal, No. 140, Jan. T., 1899, by plaintiff, from judgment of C. P. York Co., on verdict for defendant. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass to recover damages for the alleged wrongful sale of plaintiff's goods.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[There was no delivery, according to the testimony in this case, of these farm implements. They were used on the premises

as they were before, and they were used there by Charles A. Lehr as before the sale. The horses remained in the stable without any visible change of ownership, or possession by the plaintiff. The implements were on the place as they were before; the tobacco remained in the shed where it was,—all on the premises where it was before, without apparently being taken into the possession of the plaintiff. As far as the evidence goes, there was no change, or visible change, of this property,—nothing to show that it passed into her possession, or that she exercised any exclusive control of this property, that she alleges she bought from her brother, after the sale.] [3] . . . .

Plaintiff's points and the answers thereto among others were as follows:

1. The plaintiff, having sworn that she purchased the goods and personal property of Charles A. Lehr previous to the sheriff's levy and sale, and the same remained hers to the date of the sheriff's sale, and that the said Charles A. Lehr after said sale exercised no acts of ownership about the same; and it further appearing from the evidence of the plaintiff, if believed, that she had for ten years been lessee of the house and garden on the premises in question, it is for the jury to find from all the evidence in the case whether the alleged sale of the personal property of Charles A. Lehr to the plaintiff was bona fide, and whether or not there was a delivery of the goods in question to the said plaintiff before the sheriff's levy on the same. *Answer:* This point is refused. [1]

3. The verdict of the jury should be for the plaintiff for the value, on the day of sale, of each and every article of personal property sold by the defendant, which the jury find from the evidence was then and there in the possession of Kizzie Lehr, and was her property before the levy, whether bought from Charles A. Lehr or any one else. *Answer:* This point is refused, because it includes the property bought from Charles A. Lehr, including the horses, farming utensils, posts, rails, tobacco and other articles which, in the opinion of the court, is not proved to have been delivered to the plaintiff, and over which she exercised exclusive control, in the manner I have already stated; and upon which the court has already instructed the jury she cannot recover for in this case. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–3) above instructions, quoting them; (4) instruction copied in opinion of Supreme Court, quoting it; (7) refusal of new trial; (8) in entering judgment for defendant.

*N. M. Wanner*, with him *E. D. Bentzel*, for appellant.—The court had no authority to impose conditions as to a new trial: Bradwell v. Ry. Co., 139 Pa. 404; Reno v. Shallemberger, 8 Pa. Superior Ct. 439.

Whether or not under the particular circumstances plaintiff's possession was bona fide and sufficient as against the creditors of Charles A. Lehr was a question of fact for the jury, under the authorities: Crawford v. Davis, 99 Pa. 576; McGuire v. James, 143 Pa. 521; Evans v. Scott, 89 Pa. 136; Renninger v. Spatz, 128 Pa. 524; Pearson v. Carter, 94 Pa. 156; Smith v. Crisman, 91 Pa. 431; McMarlan v. English, 74 Pa. 296.

*James G. Glessner*, for appellee.—The vendor continuing in possession under the transaction was fraudulent per se and void against a bona fide creditor, without notice, who levied on an execution.   And any neglect in leaving the vendor in possession is fraudulent within the statute of 13 Eliz.: Clow v. Woods, 5 S. & R. 275; Young v. McClure, 2 W. & S. 147; McBride v. McClelland, 6 W. & S. 94; Weller v. Meeder, 2 Pa. Superior Ct. 488; Pressel v. Rice, 142 Pa. 270; Lautner v. Kann, 184 Pa. 334; Berwald v. Ray, 8 Pa. Superior Ct. 365.

The court did not abuse its discretion in refusing a new trial under the circumstances: Campbell v. Sproat, 1 Yeates, 327; Turnbull v. O'Hara, 4 Yeates, 446; Andrews v. Andrews, 5 S. & R. 374; Christner v. John, 2 Pa. Superior Ct. 78; Sergeant v. Ingersoll, 15 Pa. 343; McBride v. Daniels, 92 Pa. 332; Crew v. McCafferty, 124 Pa. 200; Devinney v. Reeder, 1 Penrose & Watts, 400; Com. v. Roddy, 184 Pa. 292.

The case of Bradwell v. Railway Co., 139 Pa. 404, cited by appellant, does not apply to this case.   There the verdict was in favor of the plaintiff and there was error in the rulings of the court on the law of the case; here it is the reverse.

OPINION BY MR. JUSTICE DEAN, July 19, 1899:

This is an action of trespass against defendant, sheriff of York county, to recover damages for the alleged wrongful

seizure and sale of her goods on an execution against her brother, Charles A. Lehr.

The farm on which the property, live stock, farming implements, grain in the ground, etc., was seized, belonged to the brother. Both were single. The evidence showed that they went upon the farm in 1886, she keeping house for him until the date of the sale. At the time they went upon the premises, by a written agreement, the brother leased to her the house, yard and garden; she to furnish board and lodging for all the help he might require upon the farm; further, that she should keep upon the farm, cows, hogs, chickens and turkeys; further, she should receive from him the sum of $12.00 per month. It was further stipulated that at any time her compensation amounted to a sufficient sum, she should have the right to purchase all the personal property on the premises and hold the same as her own.

From the date of this agreement, for about ten years, the brother and sister lived upon the farm under the terms of it. In October, 1896, she claimed there was due her from him under it, $1,440; and further, that in October, 1891, she had loaned to him of her own money, $986, and had taken his receipt therefor, both sums with interest making $3,388.50; and that in payment of this debt he had sold and delivered to her by bill of sale in writing all the personal property upon the farm, not already owned by her, including grain in the ground and tobacco. The plaintiff claimed, as belonging to her under the terms of the first agreement, made when they went into possession, and as purchased from others by herself, certain live stock and poultry of the value of $335.

To April term, 1895, one George Rutter obtained a judgment against Charles A. Lehr, on which, to January term, 1897, he issued execution, levied on all the property on the farm; the sheriff sold the same at public sale; before sale he was notified by the sister that the property belonged to her. She then brought this action. At the trial in the court below three questions arose on the evidence:

1. Was the sale by the brother to her actually fraudulent?

2. If not fraudulent in fact, was it against creditors constructively fraudulent, for want of such change of possession as required by law in a sale of chattels?

3. What articles were the sister's, not purchased from the brother under the bill of sale, and what was their value?

As to the goods purchased from her brother under the bill of sale, the court instructed the jury thus : " So in this case, there was no visible change of possession, either actual, by notice, sign, symbol or otherwise ; and the property continued in the possession of Charles A. Lehr, on the property where he alleged the sale took place. And, as a matter of law, we instruct you that the plaintiff cannot recover for any articles which she alleged she purchased from Charles A. Lehr, her brother, and which remained in his possession, excepting the growing grain and manure. The posts and rails, and the farming implements and the horses, and all the other articles, were not sufficiently, in the opinion of the court, delivered to the plaintiff, and she did not exercise exclusive control over the same, in the opinion of the court, to justify the matter being submitted to the jury, and to vest the property in her. Therefore, we instruct the jury that you cannot allow for any articles which she alleged she purchased from her brother, excepting the grain in the ground, the manure, and the cooking stove, which I understood was in the house, and we will take it for granted that it was in the house, because it does not appear that it was otherwise, so far as I remember, and it is alleged to have been sold for one dollar."

This is made the subject of complaint in appellant's first, second, third, fourth and fifth assignments of error. From the evidence, it is probable, there was no intentional fraud in this sale. The decided weight of the evidence seems to show that the brother, during the ten years they had been living together on the farm, had become indebted to the sister to the amount of the purchase money; he appears to have been thriftless, perhaps to some extent unfortunate ; she was industrious and frugal, carefully turned the products of the farm coming to her into money, and saved it. The purpose of the sale seems not to have been to hinder, delay or to defraud the brother's creditors, but to prefer her as a creditor. But there was no change of possession, such as the property was capable of, following the sale, either actual or symbolical. True, the brother was not required to separate from his sister and leave the farm, so that she could remain in the exclusive possession of the property ;

but he could have withdrawn from the control of it; could have surrendered the keys of the barn to her; both or either could have, in some public manner manifested the change of ownership which had taken place. But to all outward appearances, his ownership remained the same as before; there was no break in the possession, real or ostensible. As to creditors, therefore, the sale was constructively fraudulent, under all the authorities from Clow v. Woods, 5 S. & R. 275, down to Pressel v. Bice, 142 Pa. 270. But as to the property which she took upon the farm ten years before, and purchased from others afterwards, that was clearly hers; the brother never had title to or possession of it; his creditors had no more claim to it, either in law or equity, than to the shoes upon her feet. The jury, as to this property, should have been peremptorily instructed to find in her favor its value on the evidence; and that was the opinion of the learned judge of the court below, as is apparent from his charge. But, evidently, much to his surprise, they brought in a general verdict for defendant. It is not improbable, they failed to comprehend his instructions. Instead, however, of at once setting aside the verdict and ordering a new trial, he entertained a motion for a new trial; while this was pending, the court received a communication from defendant's counsel, stating that his client would pay $250 and the costs; thereupon it directed that, on proof of tender of that amount to plaintiff and costs in full settlement of her claim, and her refusal to accept it, the new trial would be refused. On tender, she did refuse it; thereupon, the court overruled the motion for new trial, and directed judgment for defendant with costs of suit. This action of the court forms the basis of appellant's seventh and eighth assignments of error. The exercise of discretion by the court in granting or refusing a new trial is never reviewed here, except in a clear case of abuse of that discretion. And the action of the court, in directing the release or modification of a verdict in favor of the plaintiff, with the alternative of a new trial if the direction be not heeded, has more than once been held a proper exercise of discretion. But here, in flat disobedience to the instruction of the court, the verdict was for defendant. The plaintiff claimed that the value of her goods, wrongfully seized and sold, even under the law as held by the court, was $335. And whether this was the

value or not, she had offered evidence tending to establish it as the value. As a suitor, under the law, she had a right to the opinion of the jury on. the evidence ; and the court at the trial thought so too. It, however, now directs her arbitrarily to strike from her claim $85.00, and as a penalty for refusal, in effect, says she shall have nothing and pay the costs. Under all the rules regulating the practice of courts, she was entitled to a new trial, when the jury, either ignorantly or contumaciously refused to obey the law as directed by the court; but where is the authority in precedent or reason for arbitrarily deducting from what she insists is an honest claim, $85.00? The court does not say take $250 or a new trial, for she has no verdict; but it says, take $250 or nothing, and pay the costs, in the face of its own opinion at the trial that she was in law entitled to the value of her goods wrongfully seized for her brother's debt. We think there was no discretion in the court, authorizing it to impose such terms.

There was another stipulation in the terms imposed which is, to say the least, of doubtful propriety. She was to accept the $250 in "full settlement of her claims." Her claims were over $3,000, including the property embraced in the bill of sale by her brother; if she assented to the terms of the order, her right to have reviewed here the law as announced by the court with reference to constructive fraud was relinquished; the defendant would have been discharged, not only from the claim for $335, but from that of $3,000. We think the terms in this particular were hard ones, and not such as should meet the approval of this Court. Penalties should not be imposed upon suitors which shut them off from the appeals allowed them by law. If the court had directed defendant to pay and plaintiff to accept $335, the amount of her claim, leaving her free to prosecute her assignment of error to the law laid down on the question of constructive fraud, she could then have had no ground of complaint, for no right would have been invaded.

Nor are we without authority on the point. In Bradwell v. Railway Co., 139 Pa. 404, the plaintiff brought suit for damages against the railway company for injuries caused by neglect to keep its track in repair ; a broken and bent rail had caused a serious injury to himself and vehicle ; there was no question as to the negligence of defendant; it was in dispute whether

plaintiff had contributed to the injury by negligent driving; this was left to the jury, who found a verdict for plaintiff in six and one fourth cents damages. On a motion for a new trial, the trial judge held that either the plaintiff on the evidence was entitled to substantial damages or to nothing, but to avoid the trouble and expense of a new trial, he undertook to administer what seemed to him the equities of the case, and made this order: "That if defendant pay to plaintiff within thirty days $400 with costs, then new trial is refused, otherwise new trial will be granted." The plaintiff refused to accept the $400, and the court entered judgment on the verdict. On review by this Court, in an opinion by the present chief justice, it was held that plaintiff had a right to have the jury pass on the question of damages, and by their verdict award him such sum as he was entitled to. And for this reason, among others, the judgment was reversed.

There is nothing of merit in the sixth assignment of error calling for discussion, and it is overruled. But for the reasons already given, the seventh and eighth assignments are sustained.

The judgment is reversed and a venire facias de novo awarded.