Miller, Appellant, *v.* McMinn's Industries, Inc.

Argued January 9, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Harold E. Martin,* for appellant.

*F. Lyman Windolph,* with him *Windolph, Burk-
holder & Hartman,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 19, 1963:

Appellant suffered a crushed left foot and leg when he was struck by a roller on October 24, 1952. To recover for his injuries, he instituted an action of trespass against appellee, the owner of the roller, whose employee was operating it at the time of the accident. The matter was tried before the Honorable WILLIAM G. JOHNSTONE, JR., and a jury, on October 2, 1961. Only the appellant testified, and at the conclusion of his testimony as to the circumstances of the accident, he rested as to liability. Appellee's motion for compulsory nonsuit was granted by the trial judge and, upon denial by the court en banc of appellant's motion to take off the nonsuit, the instant appeal was instituted.

We have often stated that in passing upon the propriety of a judgment of compulsory nonsuit, we are guided by well established principles: (1) a nonsuit should be entered only in a clear case: *DiGiannantonio v. Pittsburgh Railways Company*, 402 Pa. 27, 166 A. 2d 228 (1960); *Haddon v. Lotito*, 399 Pa. 521, 161 A. 2d 160 (1960); *Dunmore v. McMillan*, 396 Pa. 472, 152 A. 2d 708 (1959); (2) on appeal from a refusal to take off compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of plaintiff. *Idlette v. Tracey*, 407 Pa. 278, 180 A. 2d 37 (1962); *Davies v. McDowell National Bank*, 407 Pa. 209, 180 A. 2d 21 (1962); *Smith v. Pittsburgh Railways Company*, 405 Pa. 340, 175 A. 2d 844 (1961); *Donaldson v. Maffucci*, 397 Pa. 548, 156 A. 2d 835 (1959).

Reviewing the record in the light of the above principles, we find the facts to be these. Appellant was employed as an inspector by the Department of Highways of the Commonwealth. Appellee was the contractor on a particular road construction project for

the Department and appellant was assigned to inspect the work. On the day of the accident, appellee was engaged in black-topping a section of highway and was employing a machine known as a Barber-Greene Finisher. This is a large machine which spans the entire traffic lane being surfaced. The asphalt material is dumped into a hopper at the front of the machine, whence it passes through the machine and is dispensed from the rear onto the highway.

The third lane of the highway was being surfaced on the day in question and the fourth or southernmost lane was closed to traffic because of the construction work. The work was proceeding in daylight on a clear, cold, dry day and the section of highway under construction was level. The Barber-Greene machine was proceeding from east to west in the course of laying the black top and was being followed by a ten ton roller. The roller was about forty feet behind or to the east of the Barber-Greene and was partly in the third lane but mostly in the fourth lane. The roller was engaged in rolling the seam between the newly laid asphalt and the concrete of the fourth lane. The roller was so constructed that a water jacket obstructed the view of its operator and made it impossible for him to observe objects or persons immediately in front of it. The accident occurred very shortly after the commencement of that day's operations. Appellant, who was experienced in his job, knew that when the Barber-Greene began to move, the roller would, in ordinary course, begin its following movement.

Appellant's duty was to measure the thickness of the asphalt and to measure and record the temperature of the material. He measured the thickness of the material by standing on a catwalk on the back of the Barber-Greene and putting a ruler into the material as it was spread. The temperature was measured by placing a thermometer into the hopper at the front of the Barber-Greene and reading what it recorded.

The opinion of the court below properly summarizes appellant's testimony on the circumstances surrounding the accident as follows: "Immediately before the accident, the plaintiff left the catwalk at the rear of the spreader and walked to the front of the machine. He took the thermometer out of the blacktop in the hopper and was standing in the fourth lane beside the Barber-Greene machine when the pony wheel of the roller struck and crushed his left foot and leg. The plaintiff was facing west and was about to make a notation in his field notebook when he was struck.

"The last time the plaintiff saw the roller it was stopped about forty feet back or east of the Barber-Greene machine and had not yet started operations. He neither saw nor heard the roller before he was struck but he expected the roller to be partly in lane four, not closer, however, to the spreader than forty feet. After removing the thermometer from the blacktop in the hopper of the spreader, the plaintiff was standing in the fourth lane beside the spreader and, although he knew the roller was mostly in the lane in which he was standing, he did not look to see where the roller was. There was no whistle or warning device on the roller and the plaintiff knew the operator of the roller could not see anything immediately in front of him. The plaintiff testified that there was nothing to obstruct his view and that he could have seen the roller if he had turned and looked."

The trial court entered, and the court en banc refused to take off, a judgment of compulsory nonsuit on the ground that appellant was guilty of contributory negligence as a matter of law, even assuming that his testimony had established negligence on the part of appellee. May we say that the appellant, who by looking could have observed this giant machine and removed himself from peril and who knew or should have known that it was approaching him from the rear, was exer-

cising proper care for his safety when he failed to look? To ask this question is to answer it.

We agree with the court below which said: "For anyone to be hit by a ten-ton roller seems to us to be inexcusable under almost any conceivable circumstance. But to be hit by such a roller when the person hit knew the roller was being operated in the same lane of the highway in which he was standing and approaching from his rear, without looking to see where the roller was, is a gross disregard for his personal safety and an almost complete lack of care. There was nothing to prevent the plaintiff from seeing the roller if he had looked, and there was no compelling reason for him to be making notes in his field book in the path of the approaching roller whose operator the plaintiff knew could not see him to warn him of the danger. By simply turning his head and looking, the plaintiff would have seen the roller and could then have gone to a safe place to make his notes. True, his duty required him to keep field notes but it did not require him to do so in a place of danger."

This is that type of "clear case" in which a nonsuit may properly be entered. Appellant's own testimony is such that we come inescapably to the conclusion that the court below properly decided that "the serious injuries suffered by the plaintiff could have been avoided by the exercise of reasonable care and, since the plaintiff clearly and irrefutably contributed to his own injury, he cannot recover."

Judgment affirmed.

Mr. Justice MUSMANNO dissents.