Schwartz, Appellant, *v.* Urban Redevelopment Authority of Pittsburgh.
Shapero, Appellant, *v.* Urban Redevelopment Authority of Pittsburgh.

Argued November 21, 1962. Before BELL, C. J., MUSMANNO, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused July 26, 1963.

532

*Harold Gondelman,* for appellants.

*Theodore L. Hazlett, Jr.,* with him *William H. Mendlow, David W. Craig,* and *Mead Mulvihill, Jr.,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 2, 1963:

These appeals involve two actions in equity, instituted by the respective appellants against the Urban Redevelopment Authority of Pittsburgh [Authority] and the City of Pittsburgh [City]. Appellant Schwartz, as trustee for a corporation to be formed, and appellant Shapero, in his own behalf as a taxpayer and in behalf of other taxpayers of the City, filed complaints in equity seeking: 1. to enjoin the Authority and the City "from taking any action to sell, grant, convey, lease, mortgage, encumber, pledge or in any manner dispose of or attempt to dispose of" a certain parcel of land in a redevelopment area to Bell Telephone Company or others; 2. to require the Authority to show cause why the parcel of land should not be conveyed to Schwartz; and 3. to compel the authority to accept Schwartz's proposal.

The two suits involved identical questions of fact and law and were consolidated for trial. At the conclusion of appellants' case, the chancellor granted appellees' motions for a compulsory nonsuit. The court en banc refused appellants' motions to take off the judgments of nonsuit, thereby giving rise to these appeals.

Rule 1512, Pa. R.C.P., provides for the entry of nonsuits in actions in equity as follows: "The court may

enter a non-suit against the plaintiff *under the same circumstances, subject to review in the same manner* and with the same effect as in actions at law." (Emphasis supplied). We are therefore guided by the principles that a nonsuit should be entered only in a clear case, and, on appeal from the refusal to take off a compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of plaintiff. *Miller v. McMinn's Industries,* 410 Pa. 234, 188 A. 2d 738 (1963), and cases cited therein.

From the pleadings and the evidence, the following facts appear to be uncontroverted: The Urban Redevelopment Authority of Pittsburgh, Pennsylvania, is a corporate body created under the provisions of the Urban Redevelopment Law of the Commonwealth of Pennsylvania, Act of May 24, 1945, P. L. 991, 35 P.S. §1701 et seq., as amended. The City of Pittsburgh is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is an indispensable party to the proceedings by virtue of the provisions of the Urban Redevelopment Law, since it is required to approve the proposed sale, lease or transfer of any real property in a redevelopment area.

The Authority, by the exercise of the power of eminent domain, obtained title to and razed the area known as the Lower Hill Redevelopment Project, Redevelopment Area No. 3. After the construction of new streets and grades, sewers and utility lines, the Authority, in January, 1959, compiled and circulated to interested persons a booklet known as the "Land Disposition Documents" and invited proposals from the public for bids to purchase the tracts of land in the redevelopment project. Appellant Schwartz submitted a proposal to purchase Lot "E" in the redevelopment project area for $200,000 which was in excess of

the total asking price of the Authority, the asking price being $196,100. The proposal for the construction of a drive-in hotel was a commercial use and qualified as a proper use for commercial land in the redevelopment project area. Lot "E" is zoned commercial C-4 under the zoning ordinance of the City of Pittsburgh and one of the permitted uses for lots so zoned is a hotel. The "Land Disposition Documents" circulated by the Authority state that one of the permitted land uses and buildings for an area zoned C-4 included hotels.

The term "hotel" as defined in article 2 of the zoning ordinance is a building designed for occupancy primarily as a temporary aboding place of individuals who are lodged, with or without meals, in which building (a) there are more than ten sleeping rooms, (b) fifty per cent or more of the gross floor area devoted to residential uses in suites, (c) incidental business may be conducted, (d) there may be club rooms, ball rooms and common dining facilities, and (e) such hotel services as maid, telephone and postal service are provided.

Appellant Schwartz testified that his proposal was for a hotel within the definition of the zoning ordinance.

The proposed uses for zoning classifications in a redevelopment project area arise by certification to the redevelopment agency by the City Planning Commission of the area in the Lower Hill for redevelopment. The City Planning Commission prepared a redevelopment area plan dated June 7, 1955 and in conformity with this redevelopment area plan, the Authority prepared a proposal for the redevelopment of Redevelopment Area No. 3. After a public hearing, duly advertised in accordance with the Urban Redevelopment Law, the proposal and redevelopment area plan were approved by the City Planning Commission and by the Council of the City of Pittsburgh. In all of the ac-

tions by the planning commission, the Authority and city council, Lot "E" was zoned C-4 and among its permitted land uses and buildings was that of a hotel.

The Schwartz proposal to purchase parcel "E" was rejected by the Authority. In its letter to Schwartz rejecting his proposal, the Authority stated: "While a motel, being a commercial use, qualifies as a proper use for commercial land in the Lower Hill project, the Board's decision hinged on their desire to see commercial development on Parcel 'F' [the parties agree that the parcel is "E"] which would relate more directly to the needs and desires of the 935 families eventually to occupy the apartments to be constructed by Webb & Knapp on Parcel 'G' directly across the street from the parcel in which you were interested." The report of the Authority staff, relative to the Schwartz proposal contains the following language: "We feel that the development of this site for motel purposes, while in keeping technically with the Redevelopment Area Plan controls on land use, would not be ideally compatible with either the existing commercial uses along Fifth Avenue or with the residential development north of Colwell Street."

Subsequent to the rejection of the Schwartz proposal, the Authority entertained a proposal from the Bell Telephone Company, to erect, on parcel "E", a building to house electronic computers employed in the preparation of bills for Bell's customers, the proposed purchase price being $196,100.

For appellants to challenge the rejection of the Schwartz proposal, they must show that the Authority has acted capriciously, arbitrarily or in bad faith. *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A. 2d 331 (1954); *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A. 2d 92 (1956); *Schenck v. Pittsburgh,* 364 Pa. 31, 70 A. 2d 612 (1950).

The Authority is a public body exercising public powers of the Commonwealth as an agency thereof. 35 P.S. §1709; *Belovsky v. Redevelopment Authority of Philadelphia,* 357 Pa. 329, 54 A. 2d 277 (1947). As a public body it stands in a fiduciary relationship to the public and to taxpayers and its conduct must always be guided by the rule of good faith, fidelity and integrity. *Heilig Bros. Co., Inc. v. Kohler,* 366 Pa. 72, 76 A. 2d 613 (1950).

This Court has held that the mushrooming of authorities at all levels of government and the frequent complaints that the agencies arbitrarily or capriciously and unintentionally ignore or violate rights which are ordained or guaranteed by the Federal and State Constitutions and established law make it imperative that a check rein be kept upon them. *Keystone Raceway Corp. v. State Harness Racing Commission,* 405 Pa. 1, 173 A. 2d 97 (1961).

The principles enunciated above are those which ultimately must guide the determination of the question of whether the action of the Authority in rejecting the Schwartz proposal constitutes an abuse of discretion. In the present posture of the litigation, however, we are not required to, nor do we, rule on the merits of this basic question. Our function now is to determine whether the chancellor properly granted a nonsuit, and whether the court below properly refused to take off the nonsuit.

In *Shechter v. Shechter,* 366 Pa. 30, 76 A. 2d 753 (1950), we said that a nonsuit, in an action in equity, "should only be entered in a clear case where the plaintiff cannot recover under any view of the evidence with every doubt resolved against its entry and all inferences drawn most favorably to the plaintiff: [citing cases]. As a general rule unless there are no conflicting inferences to be drawn it is far better to hear the defense so that the appellate court may have the benefit

of findings of fact and conclusions of law by the chancellor confirmed by the court en banc." *Shechter* was decided under equity rule 66, which governed the practice prior to the promulgation of Rule 1512, Pa. R.C.P. The principle stated, however, is sound under either rule.

Appellants argue that the proposed Bell Telephone edifice is no more compatible with the overall redevelopment plan than is the proposed Schwartz motel. They urge that the rejection of the Schwartz proposal and subsequent acceptance of Bell's constitute arbitrary and capricious actions by the Authority. Appellants' evidence is sufficient to make out a prima facie case showing that the actions of the Authority were arbitrary and capricious. A review of this record does not reveal that appellants "cannot recover under any view of the evidence," with "all inferences drawn most favorably" to them. Nor does a review of this record indicate that "there are no conflicting inferences to be drawn" from the evidence.

In light of the foregoing, the chancellor erred in entering a nonsuit, and the court en banc erred in refusing to take it off. The case must be remanded to the court below for a new trial.

Decrees reversed, new trial granted, costs to abide the event.

Mr. Justice MUSMANNO dissents.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

At the outset, I question the standing of appellant-trustee, Jerome Schwartz, to prosecute this action. In *Noonan v. York School District*, 400 Pa. 391, 162 A. 2d 623 (1960), we held that a disappointed bidder in a situation such as this suffers no personal injury which entitles him to legal redress. We stated therein that if there be an injury in such situation, it is an injury

to the general public which is rectified by means of a taxpayers' suit. Since Jerome Schwartz brought this action in a private capacity—and not as a taxpayer—his appeal should be dismissed.

Turning to the more important question of the merits, the majority opinion has improperly applied the well established principle that courts will not review actions of governmental bodies that involve acts of discretion in the absence of a showing of bad faith, fraud, arbitrariness, or capriciousness. See *Eways v. Reading Parking Authority*, 385 Pa. 592, 124 A. 2d 92 (1956), and cases cited in the majority opinion. Since no one contends that the Authority acted fraudulently or in bad faith, we are limited to determining whether plaintiff-appellant presented sufficient evidence to prove, if his evidence is given every favorable inference and is unrebutted, that Authority acted in a capricious or arbitrary manner. A review of the record discloses that he has not satisfied this burden.

The unanimous decision of Authority to reject appellant's bid was based upon the advice of its technical advisory staff, the report of independent consultants, Griswald and Bigger, who were experts in the area of city planning, and the individual experience of the members of Authority, who were prominent citizens of Pittsburgh and familiar with its problems. All of these individuals concluded that the Schwartz proposal would not be compatible with the existing and contemplated commercial and residential uses in the area. In addition, this was not a bare conclusion unsupported by any reasons. In support thereof it was stated, inter alia, that:

(1) the proposed use would attract transients into the area, a situation which was thought to be undesirable.

(2) residents of the 1000-family apartment structure to be constructed across the street from the site of

the proposal would be exposed to an unattractive view of the motel surrounded by a large surface parking area.

(3) said proposal was generally not acceptable from an aesthetic point of view.

To upset the decision of Authority, appellant's evidence and inferences therefrom must show more than a mere error in judgment; it must show no judgment at all. In his attempt to establish that the decision of Authority was arbitrary or capricious, appellant relied mainly on cross-examination of the members of Authority. Evidence of this negative character carries little weight indeed in meeting the high standard of proof necessary to overturn Authority's decision. To permit otherwise, would encourage parties discontented with administrative action to engage in exploratory litigation with the hope that members of the administrative board will make poor witnesses.

Without passing judgment on the soundness of Authority's reasons, I conclude that its rejection of appellant's proposal was not an act of unbridled discretion but, rather, a carefully deliberated decision based upon the reasoned opinion of experts. I would therefore affirm the opinion of the court below.

I dissent.