## West Deer Civic Assn. v. West Deer Township

*Ruth F. Cooper,* for plaintiff.

*John H. Bingler, Jr., Edward L. Springer* and *Joseph Friedman,* for defendants.

FINKELHOR, *J.,* April 1, 1975—The above-captioned case, in equity, came before the court en banc on preliminary objections of both defendants setting forth (1) a demurrer to the complaint, (2) lack of equity jurisdiction, and (3) failure to comply with Pa. R.C.P. 2152.

Plaintiff, an unincorporated civic association and composed of residents of West Deer Township, seeks to enjoin both the Township of West Deer ("township") and the Deer Creek Drainage Authority ("authority") from spending, transferring or using funds for the creation of a sewage system by defendant authority or financing said system by the issuance of authority bonds.[1]

Plaintiff alleges that pursuant to the Act of April 13, 1972, P. L. 184 (No. 62), 53 P.S. §1-101, et seq. (the Home Rule Charter and Optional Plans Law), the voters of West Deer Township approved a new township charter by a referendum vote on May 21, 1974. A copy of this charter is attached to the complaint.

Said charter includes a preamble or report by the Home Rule Study Commission, which strongly condemns the use of municipal authorities as a method of municipal borrowing or financing and

---

1. Specifically, plaintiff requests the court as follows: (1) to enjoin the township from transferring funds to the authority or to set aside funds for the creation of a sewage system; (2) to enjoin the authority from issuing bonds or any other act; (3) to declare that any act or contract in creating the authority is ultra vires; (4) to impose a surcharge on the supervisors of the Township for moneys spent on behalf of defendant authority.

specifically mandates in section C-1198, the board of supervisors to terminate existing authorities as soon as legally practicable, to prevent increased indebtedness of any pre-existing authority, and that no new authority should be formed without approval of the electorate by a referendum vote.[2] Section C-1196 provides for the continuity of ordinances, resolutions, rules and regulations in force at the time of the adoption of the charter which are not inconsistent with the terms of said charter.

Both the preamble and the provisions for the election of new municipal officers, set forth in sections C-1011 and 1013, indicate that the charter approved in May 1974, is to become effective January 1, 1976, after the 1975 municipal elections for township supervisors under the new governmental structure. The township is presently governed by three supervisors who were elected for six-year terms prior to the May referendum.

On or about October 10, 1974, approximately five months after the approval by the voters of the new charter, the township supervisors enacted an ordinance to signify their intention to create a municipal authority in cooperation with Indiana

---

2. The full text of section 1198 is as follows:

"The Board of Supervisors is mandated to terminate any existing municipal authorities as soon as legally and reasonably practicable.

"The Board of Supervisors is further mandated to take all actions necessary to prevent the further increase in indebtedness of any existing municipal authority.

"No new municipal authority shall be created except upon approval of the electorate under a referendum as provided in this Charter."

As neither party argued the legality of this section, the Court is not ruling on this issue and for the purposes of this opinion assumes the validity of section 1198.

Township and to be known as the Deer Creek Drainage Basin Authority under the Municipality Authorities Act of May 2, 1945, P.L. 382, as amended, 53 P.S. §301, et seq. Articles of incorporation were approved by the Secretary of the Commonwealth on or about October 21, 1974, and a certification of incorporation was issued.[3] While plaintiff has not specifically so alleged, it is the understanding of the court that the supervisors have not scheduled a referendum for voter approval of the authority.

It is the position of plaintiff that the creation and operation of authority, including the issuance of bonds, is contrary to the terms of the new charter, that the actions of the supervisors are ultra vires and that it lacks an adequate remedy at law.

The complaint does not allege nonconformity with the Municipality Authorities Act and plaintiff's cause of action is grounded on the violation or circumvention of the new charter.

Accepting plaintiff's facts as stated, it is defendants' position that, since the new charter does not become effective until January 1976, plaintiff has failed to allege unlawful acts, abuse of discretion or bad faith on the part of the present township board of supervisors or board of the authority[4] to support injunctive relief and, therefore, equity lacks jurisdiction.

In determining whether preliminary objections in the nature of a demurrer should be sustained, the question, to be decided by the court, is not

3. The dates of incorporation were included in defendants' brief. Plaintiff alleges lack of knowledge of the facts surrounding the creation of the authority.

4. As to defendant authority, it is further argued that the legality of the authority board must be raised quo warranto.

whether the allegations of the complaint are so clear in both form and specification as to entitle plaintiff to proceed to trial without amending it, but whether, upon the facts averred, it shows with certainty that the law will not permit recovery by the plaintiff: Catanese v. Scirica, 437 Pa. 519, 263 A.2d 372 (1970). Further, when the sustaining of preliminary objections results in the denial of a claim or dismissal of the suit, preliminary objections should be sustained only in cases which are clear and free from doubt: Legman v. Scranton School District, 432 Pa. 342, 247 A.2d 566 (1968); Conrad v. Pittsburgh, 421 Pa. 492, 218 A.2d 906 (1966).

While plaintiff seeks to argue that the activities of the township supervisors and the authority board are governed by the 1974 Home Rule Charter and the defendants seek to support preliminary objections by alleged compliance with the Municipality Authorities Act, the crux of the issue presented to the court is the *impact* of the statement of policy and general provisions of the charter, prior to its effective date. The issue is not whether the charter provision became immediately effective—the preamble to the charter, itself, establishes the date of January 1, 1976—but whether the action of the board of supervisors in creating an authority, or in creating an authority without utilizing the referendum procedure set forth in section C-1198, supra, constitutes an abuse of discretionary power.

In other words, while there has *not* been noncompliance with an operative charter under the facts of plaintiff's complaint, the question remains whether a governing body can legislate in direct opposition to the stated policy of an act or charter,

to be effective at the stated future date, particularly where such legislation may be binding and irrevocable upon the effective date of the new charter. In the judgment of the court, the above-stated facts, if properly pleaded in the complaint, could state a cause of action.

Traditionally, under the doctrine of separation of powers within the American governmental structure, courts are reluctant to review the activities of elected or appointed municipal officials: Flaherty v. Allegheny County Port Authority et al., 450 Pa. 509, 299 A.2d 613 (1973). It is well settled that courts will not review acts involving municipal discretion in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of such discretion: Weber v. Philadelphia, 437 Pa. 179, 262 A.2d 297 (1970); Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446, 160 A.2d 539 (1960); Robinson v. City of Philadelphia, 400 Pa. 80, 161 A.2d 1 (1960). However the courts have also recognized the need to subject the activities of public bodies to judicial scrutiny to protect the electorate against the abuse of power: Faden v. Philadelphia Housing Authority, 424 Pa. 273, 227 A.2d 619 (1967); Schwartz v. Urban Redevelopment Authority, 411 Pa. 530, 192 A.2d 371 (1963).

In Faden v. Philadelphia Housing Authority, 424 Pa. 273, 279, the Supreme Court summarized prior cases and stated as follows:

"In Price v. Philadelphia Parking Authority, 422 Pa. 317, 329, 221 A.2d 138, 145 (1966), the Court stated: 'As public bodies, . . . [authorities] exercise public powers and must act strictly within their legislative mandates. *Moreover they stand in a fiduciary relationship to the public which they*

*are created to serve and their conduct must be guided by good faith and sound judgment:* See Schwartz v. Urban Redevelopment Auth., 411 Pa. 530,536, 192 A.2d 371, 374 (1963); Heilig Bros. Co. Inc. v. Kohler, 366 Pa. 72, 77, 78, 76 A.2d 613, 616 (1950). The mushrooming of authorities at all levels of government and the frequent complaint that such bodies act in an arbitrary and capricious manner in violation of existing law dictate that a check rein be kept upon them. Schwartz v. Urban Redevelopment Auth., 411 Pa. 530, 536, 192 A.2d 371, 374 (1963); Keystone Raceway Corp. v. State Harness Racing Comm., 405 Pa. 1, 5, 173 A.2d 97, 99 (1961) . . .' " (Emphasis supplied.)

While the principles enunciated above were applied to an "authority," the same principles must also guide the determination of whether the actions of elected officials constitute an abuse of good faith, fidelity and integrity.

Accepting the facts as stated in plaintiff's complaint, as we are required to do in ruling on preliminary objections, the home rule charter was adopted by the electorate with clear and concrete language prohibiting the creation of new authorities without a popular referendum and with an additional provision directing the new board of supervisors to terminate existing municipal authorities as soon as legally and reasonably practicable.[5]

Yet on or about October 10, 1974, for unstated reasons, defendant, Deer Creek Drainage Basin Authority, a new authority, was created by the

---

5. The court is not ruling at this time on whether such a provision in a home rule charter is operable under general State laws.

supervisors of defendant township jointly with Indiana Township under the terms of the Municipality Authorities Act.

Section 3.1 of the Act, supra, 53 P.S. §304, limits the right of withdrawal by a participating municipality after an obligation has been incurred: Warrington Township v. Central Bucks Sanitary Landfill Authority, 10 Bucks 182 (1960). In other words, under the Municipality Authorities Act itself, once bonds have been issued by the authority and an obligation incurred, it is questionable whether new supervisors of the township, elected under the new charter act, could withdraw from the authority or terminate responsibility for said bond issue.[6] Thus, a taxpayer's suit after the effective date of the charter might be too late to prevent injury.

The new home rule charters, which have been adopted throughout the State under the 1968 Constitution and Act 62, sec. 101, et seq. of 1972, raise many new questions of law. See Winters v. Papadakos, City Solicitor of McKeesport and Bendel, G. D. 75-2478 Civil Division, Allegheny County. Most of these charters do not take effect immediately and "lame duck" officials must continue the business of government until elections can be held. Certainly, the business of government cannot grind to a halt in this interim period. Appointments must be made, jobs filled, ordinances enacted and the basic every-day needs of the community must be served. However, in the interest of efficiency of government, we cannot become calloused to the stated will of the people, who constitute the raison d'etre of all government. We

6. Plaintiff has not alleged that bonds have been, or are in the process of being, issued.

have not reached the point in our society that it is more important that "the train run on time" than that the wishes of the "people" be considered.

Based upon plaintiff's complaint, there is a conflict between the *principles* of the home rule charter adopted by the citizens of West Deer Township in May 1974, and the subsequent action of the supervisors of that township in creating or funding a new sewage authority. Upon these facts, it cannot be said with certainty that plaintiff has failed to state a cause of action, not as argued by plaintiff that the home rule charter immediately becomes controlling upon its adoption by the electorate, but whether the failure to comply with the stated position of the voters, residents and citizens of the township constituted "an abuse of discretion" on the part of elected officials.

For this reason, while a demurrer to the form of plaintiff's complaint will be sustained, the facts as set forth in the briefs of the parties, if properly alleged, could meet the criteria of Schwartz v. Urban Redevelopment Authority, supra.

It is conceivable, and at this juncture of the proceedings the court does not know, that the township supervisors had valid and proper reason for the creation of the authority in October 1972, and that full consideration was given to the policy adopted by the electorate. Cf. State ex rel. Department of Health v. North Jersey District Water Supply Commission, 317 A.2d 86 (1974, N. J.), cert. den. 43 L. W. 3208 (1974). However, this is a matter to be developed by appropriate pleadings and subsequent trial of the case.

Equity has jurisdiction and will intervene to restrain acts of municipal authorities which are contrary to law or amount to bad faith, a violation of

public duty or a misconception of the law: Downing v. Erie City School District, 360 Pa. 29, 61 A.2d 133 (1948); Hyam v. Upper Montgomery Joint Authority, supra.

The instant suit is brought in the name of a civic association and plaintiff has petitioned for leave of court to amend the caption to comply with Pa.R.C.P. 2152 regulating the form of actions brought by unincorporated associations. However, while not raised by defendant, the defect is not only a question of form but also one of standing. See Sierra Club v. Morton, 405 U. S. 727, 92 S.Ct. 1361, 31 L. Ed. 2d 636 (1972).

As this case is in the early stages of pleadings, plaintiff may amend the complaint either to substitute the names of the four citizen taxpayers, who have filed the action as trustees ad litem, or as named plaintiffs suing in conjunction with the civic association.

For the reasons set forth in the above opinion, the preliminary objections of defendants in the nature of a demurrer are sustained, but plaintiff shall be granted an additional 20 days to file an amended complaint in accordance with this opinion.

## ORDER

And now, April 1, 1975, upon preliminary objections of defendants and petition of plaintiff to amend the caption of these proceedings and after oral argument and full consideration of the briefs of the parties, it is hereby ordered that the preliminary objections of defendants are sustained

It is further ordered that plaintiff is granted 20 days to file an amended complaint in accordance with the opinion of this court and may amend the caption of these proceedings to comply with the Pennsylvania Rules of Civil Procedure.