## Tenants Association of Park Towne v. Redevelopment Authority of the City of Philadelphia

*Harold R. Berk,* for petitioner, Tenants Association.

*John S. DiGiorgio,* for respondent, Redevelopment Authority.

*Leonard Dubin,* for intervenor, Parke Towne.

CAESAR, *J.,* December 24, 1984—On December 14, 1984, petitioner, Tenants Association of Park

Towne, filed a complaint in equity and, with it, a motion for a temporary restraining order, a preliminary injunction and a permanent injunction.

The court heard testimony on December 18 and, at the end of the day, issued a temporary restraining order to preserve the status quo.

On December 20, 1984, following a full day of testimony on December 19, the court made findings of fact, reached conclusions of law and issued an order on the record, and indicated that a memorandum would follow explaining the basis for the court's action. (Copies of the findings of fact and conclusions of law and order were distributed to counsel on December 20.)

The findings of fact follow.

## FINDINGS OF FACT

1.(a) The Redevelopment Authority holds legal title to certain real estate in the City of Philadelphia as described in two ground leases dated August 27, 1957, between the Redevelopment Authority of the City of Philadelphia and Parkway Triangle Corp. and Parkway Triangle Corp. No. 2 (hereinafter called Parkway).

(b) The Redevelopment Authority has leased said real estate to Parkway for terms of 99 years from August 27, 1957, at an annual rental of $75,000, with an option to the lessee to purchase the premises for a total sum of $1,675,000.

(c) The Redevelopment Authority amended said leases on or about January 27, 1972, by consenting to the transfer of said leases from Parkway to Park Towne, a general partnership.

2.(a)(i) Pursuant to a redevelopment contract approved by City Council of Philadelphia by Resolutions nos. 702 and 703, approved January 20, 1955,

Parkway developed and constructed four 18-story apartment buildings, together with parking, commercial facilities and the appurtenant grounds.

(b)(ii) Said project was completed on or about September 1, 1959. There was no evidence that the authority certified in writing that the project had been completed.

(c)(i) Parkway leased individual apartment units to multiple tenants.

(ii) Some of said tenants (approximately 220) are members of the Tenants Association of Park Towne, a non-profit corporation formed December 3, 1984 (hereinafter called Tenants Association). Prior to that time some tenants had formed an unincorporated tenants association.

3.(a) The present occupants of the ground, Park Towne, desire to assign the said leases, pursuant to certain agreements providing for transfer of the entire interest of Park Towne to the ground, buildings and appurtenance thereon and thereto, to an entity generally referred to as Park Towne Associates Limited Partnership, an affiliate of First Winthrop Corp. of Boston, Massachusetts (hereinafter called Park Towne Associates).

(b)(i) The Redevelopment Authority has consented to said assignment.

(ii) Said consent was given after the Redevelopment Authority held an open meeting in which representatives of Park Towne and of the Tenants Association made presentations.

(ii) Before giving its consent to the assignment, the Redevelopment Authority conducted an investigation into the First Winthrop Corporation, identified as the entity which would be directly involved in the operations and daily maintenance of the project. The investigation looked into the nature of operations involving First Withrop in other parts of

the country which were managed or supervised by First Winthrop and into its financial status and reputation.

(iv) The Redevelopment Authority did not submit to City Council of Philadelphia for its approval the Redevelopment Authority's consent to the assignment of the lease from Park Towne to Park Towne Associates.

(v) City Council of Philadelphia did not at any time approve the action of the Redevelopment Authority consenting to the assignment of said leases.

4.(a) The settlement between the present occupants, Park Towne and Park Towne Associates, was scheduled for 9:00 a.m. on December 19, 1984.

(b) Petitioners, Tenants Association, had filed an action in equity against the Redevelopment Authority on December 14, 1984, in which Park Towne intervened.

(c)(i) On the same day, December 14, 1984, petitioners, Tenants Association, moved this court for a temporary restraining order, a preliminary injunction and a permanent injunction seeking to prohibit or void any consent by the Redevelopment Authority to said assignment.

(ii) The matter was heard on December 18, 1984, as a result of which this court issued a temporary restraining order restraining the intervenor, Park Towne, from assigning its interest in said leases to Park Towne Associates. Bond was set at $10,000.

(iii) At a further hearing on December 19, 1984, it was established that settlement did not take place on December 19, 1984, and that Park Towne Associates had notified Park Towne that it was cancelling the transaction and demanded return of its letter of credit.

5. Some of petitioners, members of the Tenant Association, may suffer hardship if, in the future, the proposed assignee, Park Towne Associates, raises rents following the completion of certain proposed "improvements" to the property or if, in the future, the proposed assignee converts to condominium ownership or transfers to an entity which converts the project to a condominium.

6. The intervenor, Park Towne, will suffer hardship if the proposed transaction of Park Towne Associates is not completed.

7.(a) The above-described leases were issued pursuant to authority vested in the Redevelopment Authority of Philadelphia.

(b) The assignment of said leases from Parkway to Park Towne was done pursuant to authority vested in the Redevelopment Authority of Philadelphia.

## DISCUSSION

This case of first impression revolves around the narrow question of whether the assignment of a ground lease given by the Redevelopment Authority of Philadelphia to a developer requires the approval of the City Council of Philadelphia.

The determination rests upon an interpretation of §9(k) of the Urban Redevelopment Law, 1945, May 24, P.L. 991; 35 P.S. §1709(k), as amended. The statute provides:

"An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purpose and provi-

sions of this act, including the following powers in addition to those herein otherwise granted:

· · ·

(k) *To sell, lease or otherwise transfer* any real property located outside of a redevelopment area and, *subject to approval by the local governing body, any real property in a redevelopment area*: Provided, That with respect to a redevelopment area the Authority finds that the sale, lease or other transfer of any part will not be prejudicial to the sale or lease of other parts of the redevelopment area, nor be in any other way prejudicial to the realization of the redevelopment proposal approved by the governing body." (Emphasis added.)

## THE URBAN REDEVELOPMENT LAW

There is no appellate law which assists us in interpreting §9(k) of the act. For one thing, the factual pattern here is unique.[1] Furthermore, the court has found no cases interpreting the respective roles of a redevelopment authority and "the governing body," except in the words of §9(k) itself.

Some earlier cases discuss the nature of a redevelopment authority, describing it as a public agency of the Commonwealth which stands in a fiduciary relationship to the public taxpayers. Schwartz v. Urban Redevelopment Authority of Pittsburgh, 411 Pa. 530, 192 A.2d 371 (1962) (upholding the right to bring taxpayers' suits to challenge Authority action).

---

1. Testimony established that the Redevelopment Authority has granted only four other ground leases; all other transactions were presumably by sale. The oldest of these ground leases, by far, is the lease in question here and it is the only example of an assignment of a ground lease by a redeveloper.

The leading case of Belovsky v. Redevelopment of Philadelphia, 357 Pa. 329, 54 A.2d 277 (1947), sustaining the constitutionality of the Urban Renewal Act is helpful. There the Supreme Court said:

"[The Urban Redevelopment Law] is directed solely to the clearance, reconstruction and rehabilitation of the blighted area, and after that is accomplished the public purpose is completely realized. When, therefore, the need for public ownership has terminated, it is proper that the land be re-transferred to private ownership, subject only to such restrictions and controls as are necessary to effectuate the purposes of the act." 329 Pa. at 340.

Section 9(k).

In construing §9(k) the court is called upon to interpret the phrase "subject to the approval by the local governing body" as it relates to "sell, lease or otherwise transfer. . . . any real property in a redevelopment area . . ." "Governing body" is defined in §3[2] to mean the City Council of Philadelphia as it applies to this case. "Governing body" is referred to in §4(b) and 4(c). As previously stated, it is used in §9(k). The phrase is used extensively in §10. By 1978 amendments, the governing body may create and participate in a vacant property review committee. 35 P.S. §12.4.

Finally, §19 states that an annual report shall be filed with the mayor and governing body of the city.

This court discerns the legislative plan envisioned for the Urban Renewal Act as follows:

A strong, independent body politic is to be created with extensive powers to deal with urban blight. Its members are to be appointed by the mayor for fixed terms and the authority is to have the power to pro-

---

2. 35 P.S. §1703. The statute can be found at 35 P.S. §1701-1719.

vide its own funding, by the issuance of bonds. It shall maintain its own staff, have extensive investigative and subpoena power, planning and execution functions, powers to own, hold, manage, lease and control substantial amounts of real estate, as well as the power to condemn. Though known as the Redevelopment Authority of a city, it "shall in no way be deemed an instrumentality of such city . . . or engaged in the performance of a municipal function." 35 P.S. § 1704(a).

What, then, is the relationship of the "governing body" — here, the City Council of Philadelphia — to the Redevelopment Authority of Philadelphia?

"1. The City Council must take the first step in creating a Redevelopment Authority by passing an ordinance or resolution that there is a need for such a body." 35 P.S. § 1704(b).

2. As set forth in § 10,[3] the redevelopment authority must submit a redevelopment proposal to the city council for approval. The process involves submission to the city planning commission, which, in the usual case, then passes it on to council with its recommendation. 35 P.S. § 1710. Council must then hold public hearings on the plan, after which council shall then either approve or reject the redevelopment proposal in toto.

Upon approval of the redevelopment proposal by council, the redevelopment authority "is authorized to take such action as may be necessary to carry it out."

The governing body (council) must approve the contract with the redeveloper selected by the authority before the contract is valid. If the redevelopment contract is submitted to council with the rede-

---

3. Section 10, set forth in its entirety, is attached as Exhibit "A".

velopment proposal, it would be approved or not approved with the proposal; but if the contract with the redeveloper is offered later, it must be separately approved by council, after council has satisfied itself that the contract is in substantial conformity with the redevelopment proposal previously approved. However, no new hearing is required in that event.

3. As set forth in §9, approval of council is required for any "sale, lease or other transfer" by the authority of real estate within a redevelopment area.

The disposition of this case comes down to whether the redevelopment authority transferred real property when it consented to an assignment of the balance remaining on the 99-year ground lease it granted to the redeveloper — now known as Park Towne. If so, is it such a transfer as requires submission to city council for approval?

There is no question that the redevelopment authority owns the real estate in question. Though the lessee has an open-ended option to buy, legal title remains with the authority. Does this fact compel the conclusion that, notwithstanding that the parties called the transaction a consent to assignment of a ground lease, the transaction is really a transfer of real estate by the authority? If so, is the approval of city council now required? This court concludes that the transaction is not a transfer of real estate by the authority and that the approval of city council is not required.

Section 9(k) of the act grants to the authority the power to sell, lease or otherwise transfer real estate to which it holds title. If that real property is in a redevelopment area, the transaction requires the approval of council. This court finds that the legislative plan for the redevelopment authority, as discerned from the entire Urban Renewal Act, was to provide for a public forum for examining redevelopment proposals and an opportunity given to the

governing body to veto a redevelopment proposal it believed did not meet the policies set forth in the act or to reject a redeveloper that it believed was not able to act in substantial conformity with the redevelopment proposal it had approved. See 35 P.S. §1710(j). This conclusion is buttressed by the fact that §9(k) requires that where the property is in a redevelopment area, the authority must present a finding to council that the transfer is not "prejudicial to the realization of the redevelopment proposal approved by the governing body."

The court acknowledges that the legislative purpose is not clearly set forth in §9(k) of the Urban Renewal Act, but believes that the legislative intent was to make broad aspects of urban renewal subject to scrutiny by elected local legislators before being redeveloped, but not to require that transactions subsequent to completion of redevelopment be resubmitted for councilmanic approval. This conclusion is derived from the multiple provisions of section 10, which set forth when approval of the governing body is required, and the general grant to the authority, in section 9, of "all powers necessary or appropriate to carry out and effectuate the puposes of this Act."

For the reasons stated above, this court determines that §9(k) of the Urban Renewal Act does not require that assignment of the ground lease at issue in this case be submitted to city council for its approval.

Accordingly the court, on December 20, 1984, issued the following conclusions of law and order on the record:

## CONCLUSIONS OF LAW

1. The Urban Renewal Act does not require approval of City Council of Philadelphia to the as-

signment of leases by Park Towne, a general partnership, to Park Towne Associates Limited Partnership.

Petitioners have not established a clear right to the relief sought.

3. Petitioners have not established that greater injury would follow by granting the preliminary injunction than by not granting it.

4. The consent by the Redevelopment Authority to the assignment of leases was made after reasonable investigation and conclusions based on reasonable evidence that the purposes of the Urban Renewal Act and the provisions of the ground lease were complied with.

## ORDER

And now, this December 20, 1984, it is hereby ordered and decreed that:

1. The temporary restraining order issued by this court on December 18, 1984 is dissolved; and

2. Petitioner's motion for a preliminary injunction is denied.

## OPINION

This matter was before the court on December 18 through December 20, 1984. On December 24, 1984, the court issued a memorandum containing findings of fact, discussion, conclusions of law and order which was filed of record and copies served upon counsel.

The court incorporates herein the memorandum dated December 24, 1984, a true and correct copy of which is attached hereto, as the opinion of the court.