## Swank, Appellant, *v.* Amp.

Argued May 28, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bruce E. Cooper,* with him *Cooper & Woodside,* for appellants.

*William H. Wood,* with him *Solon L. Rhode, Jr., Charles V. Miller,* and *Hull, Leiby and Metzger,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, July 2, 1963:

Florence Swank, Shirley Bucher, Gladys Bollinger, Dorothy Roush, Barbara Bolig and Grace Olson,[1] one time employees of Amp, Incorporated (Amp), instituted an action in equity in the Court of Common Pleas of Dauphin County against Amp, a Pennsylvania manufacturing corporation. The relief sought was three-fold: (a) an accounting of the employees junior to Swank on Amp's seniority roster list as of September 1, 1960 and of wages paid to such junior employees for work done by them to which Swank was allegedly entitled under her seniority rights; (b) Swank's reinstatement to her proper seniority position on Amp's roster of employees as of September 16, 1960;[2] (3) the payment by Amp to Swank of any losses to her as revealed by the accounting when made.

Amp for some time has been engaged in the operation of manufacturing plants at various locations, one being located at Selinsgrove, Snyder County. In September, 1958, Swank was hired by Amp at its Selinsgrove plant and she remained an employee of Amp until September 16, 1960 at which time she was laid off due to changes by Amp in its production methods.

In this equity action, Swank alleged that, when she was employed, Amp, through fully authorized representatives, agreed that, after a 90 day probationary period, she would become a permanent employee and that, under an oral contract with Amp, when she had successfully completed the probationary period, she would be ". . . entitled to seniority as of the date of hire, to promotion based on seniority, and . . . to

---

[1] Each of these named plaintiffs had *identical* claims and, for the sake of brevity, in this opinion all six plaintiffs will be referred to collectively as Swank.

[2] In the court below Swank's counsel stated this relief was not pressed.

have seniority govern when the working forces of [Amp] were reduced and, if laid off, . . . to be given an opportunity to return to service in the order of said seniority . . ."; that this oral contract as it related to seniority was breached. In answer thereto, Amp alleged that no such oral contract was entered into and that the only commitment made by Amp to Swank was that she could become entitled to so-called "service credit" in her employment.

In short, Swank takes the position that, when she was employed, she had an oral contract with Amp that she would be given seniority rights on a "plant wide" basis under which her seniority rights would depend upon only one factor, i.e., *length of service in the plant,* while Amp takes the position that its only commitment to Swank was that, in the event of layoffs or rehiring, she would be entitled to the so-called "service credit" policy of Amp under which various factors, such as length of service in the plant, skill, versatility, experience and physical capacity, would be considered in determining the order in which Swank would be laid off or rehired and that the length of service in the plant was not the *only* factor to be considered.

The matter was tried in the Court of Common Pleas of Dauphin County before the Honorable CARL B. SHELLEY as chancellor. The chancellor, after the taking of testimony, found that Amp had made no oral contract with Swank, at the time she was hired, that she would be entitled to so-called "plant wide" seniority but that Amp's only agreement was that Swank would be laid off and rehired on the basis of its so-called "service credit" policy, and the chancellor, upon such findings, dismissed the complaint. The court en banc entered a decree affirming the findings, conclusions and action of the chancellor and from that decree this appeal was taken.

The nub of this controversy is whether, at the time Swank was hired, Amp orally contracted with her that,

in the event she was laid off or in the event of rehiring, she would be entitled to seniority on a "plant wide" basis. The chancellor found: [Finding of Fact] "12. [Amp] did not, through any of its employees who interviewed [Swank] at the time of [her] employment or through any of its employees who later discussed the terms of [her] employment with [her], ever represent to [Swank] in any way that 'plant-wide seniority' or length of employment would at any time be the sole factor determining the order in which production employees would be laid off if that step should prove necessary or the order in which former production employees would be rehired." That finding was arrived at after the chancellor had seen and heard the witnesses for the several parties.

In *McRoberts v. Phelps,* 391 Pa. 591, 138 A. 2d 439, we said (p. 443): "(1) the findings of a chancellor have the effect of a verdict of a jury and, when affirmed by the court en banc, will not be reversed if there is adequate evidence to sustain them and if they are not premised upon erroneous inferences and deductions drawn from the evidence: [citing cases]; (2) on appeal from an equity decree the question is not whether the appellate court, upon the same evidence, would have reached the same conclusion, but whether the evidence is sufficient to support the conclusion reached by the chancellor who had the opportunity to see and hear the witnesses: [citing cases]." See also: *Sterrett v. Sterrett,* 401 Pa. 583, 166 A. 2d 1; *Wampler v. Shenk,* 404 Pa. 395, 172 A. 2d 313.

Viewed in this light, we have carefully examined the instant record and such examination clearly reveals that there is "adequate evidence" to support the findings of fact and that such findings are not based upon "erroneous inferences and deductions drawn from the evidence". Such findings of the chancellor and the conclusions reached must be sustained.

Decree affirmed. Costs on appellants.