Schwartz, Appellant, v. Urban Redevelopment
Authority of Pittsburgh.
Shapero, Appellant, v. Urban Redevelopment
Authority of Pittsburgh.

504

Argued October 6, 1964. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument re-
fused February 26, 1965.

*Harold Gondelman,* for appellants.

*Theodore L. Hazlett, Jr.,* with him *Mead Mulvihill,
Jr.,* Assistant City Solicitor, and *David W. Craig,* City
Solicitor, for authority and City of Pittsburgh, appel-
lees.

OPINION BY MR. JUSTICE O'BRIEN, January 12, 1965:
The instant appeals are before us on appeal from
the final decrees entered below in these companion ac-
tions in equity. The litigation has been here before,
*Schwartz v. Urban Redev. Auth.,* 411 Pa. 530, 192 A.
2d 371 (1963), but in an entirely different posture.
When we first reviewed this litigation, the chancellor
had entered judgments of compulsory nonsuit, at the
close of plaintiffs' case, and we heard appeals from
the refusal of the court en banc to take off the non-

suits entered. On that occasion, this closely divided court held that the nonsuits were improperly entered and remanded the cases for new trial.

The new trials ordered by us have taken place, and the chancellor has made findings of fact and conclusions of law and entered a decree nisi, denying the relief prayed for in appellants' complaints. Exceptions were filed to the chancellor's adjudication and argued before a court en banc, which affirmed the chancellor's findings and conclusions and adopted his decree nisi as the final decree;[*] these appeals followed.

From the foregoing brief history of this litigation, it must be readily apparent that the standard of review which governs our deliberations in the instant appeal differs markedly from that which led to the result achieved in the former appeal. When this matter first appeared here, we were dealing with judgments of compulsory nonsuit and held, merely, that the plaintiffs' evidence was sufficient to create a prima facie case, thereby precluding nonsuits. In so holding, we were bound by the rule that a nonsuit should be entered only in a clear case, and, on appeal from the refusal to take off a compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of plaintiff. *Miller v. McMinn's Industries*, 410 Pa. 234, 188 A. 2d 738 (1963); *Weed v. Kerr*, 416 Pa. 233, 205 A. 2d 858 (1965).

The key question for decision at the first trial, as well as now, is whether the board of the Authority abused its discretion in rejecting appellant Schwartz' proposal to purchase a parcel in the Lower Hill Redevelopment Area for the erection of a motor hotel.

---

[*] One member of the court en banc filed a dissenting opinion in which he indicated that he would grant the relief prayed for.

In light of the standard of review applicable to the first appeal, we found that relief was possible and indicated that plaintiffs were entitled to an adjudication, after a new trial. In short, we held that the chancellor *could* reasonably infer the abuse of discretion requisite for the relief requested and, hence, the nonsuits were improperly granted.

All of the evidence, including the defense, has now been heard by the chancellor, who has made findings of fact based on that evidence. He has found that the Authority's rejection of the Schwartz proposal was based on proper criteria for the orderly development of the project and, therefore, no abuse of discretion existed. The Urban Redevelopment Law, Act of May 24, 1945, P. L. 991, 35 P.S. §1701 et seq., sets forth the powers of the Authority. Section 9(k) of the Act, 35 P.S. §1709(k), gives the Authority the power "To sell, lease or otherwise transfer . . . any real property in a redevelopment area: *Provided,* That with respect to a redevelopment area the Authority finds that the sale, lease or other transfer of any part *will not be prejudicial to the sale or lease of other parts of the redevelopment area, nor be in any other way prejudicial to the realization of the redevelopment proposal . . . .*" (Emphasis supplied)

From the evidence, the chancellor could and did find that the Authority, in the proper exercise of its discretion, considered the Schwartz proposal to be inimical to the overall redevelopment plan. The General Assembly declared the policy of the Commonwealth in the following language of the Act: "Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the health, safety and welfare of the inhabitants thereof by the creation of bodies corporate and politic to be known as Redevelopment Authorities, which shall exist and operate for the public purposes of the elimination of

blighted areas *through economically and socially sound redevelopment* of such areas, as provided by this act, in conformity with the comprehensive general plans of their respective municipalities for residential, recreational, commercial, industrial or other purposes, and otherwise encouraging the provision of healthful homes, a decent living environment and adequate places for employment of the people of this Commonwealth. Such purposes are hereby declared to be public uses for which public money may be spent, and private property may be acquired by the exercise of the power of eminent domain." 1945, May 24, P. L. 991, §2; 1957, May 27, P. L. 197, §1, 35 P.S. §1702. (Emphasis supplied) There is evidence from which the chancellor could find that the Authority considered the Schwartz proposal to be at variance with sound economic and social redevelopment of the area.

In *Swank v. Amp,* 411 Pa. 356, 192 A. 2d 225 (1963), we said, as we have said often, before and since, that the findings of a chancellor have the effect of a jury verdict and, when affirmed by the court en banc, will not be reversed if there is adequate evidence to sustain them and if they are not premised on erroneous inferences and deductions, or an error of law. Further, we held that, on appeal, the question is not whether the appellate court would have reached the same conclusion on the same evidence, but whether the evidence is sufficient to support the chancellor's conclusion. See also: *Shydlinski v. Vogt,* 406 Pa. 534, 179 A. 2d 240 (1962); *Durso v. D'Urso,* 409 Pa. 487, 187 A. 2d 270 (1963); *Felt v. Hope,* 416 Pa. 118, 204 A. 2d 923 (1964).

In the light of the standard of review here applicable, our review of the record indicates that adequate evidence exists to support the chancellor's findings and that they are not based on erroneous inferences and deductions. These findings, having been affirmed by

the court en banc, will not be disturbed by us on appeal.

Appellants also contend that the Authority, by virtue of the doctrine of equitable estoppel, is estopped from rejecting the Schwartz proposal. This argument is based on the Authority having "invited, induced and encouraged" Schwartz to submit a proposal, and the subsequent submission by him of a proposal, at considerable expense, for the erection of what the Authority had led him to believe was an acceptable structure. Of course Schwartz was "invited" and "induced" to make a proposal, as were many others, by virtue of advertising conducted by the Authority in connection with land disposition. All bidders had to expend efforts and funds in the submission of proposals, accompanied by plans, drawings, etc. The cases cited by appellants are inapposite. The expenditures made by Schwartz were normal business expenses required of all bidders on the expectancy of success. Appellees correctly state that if we accepted appellants' view, "every bidder who hired an architect and expended money to purchase property from a redevelopment authority for an allowable use, would have his bid automatically accepted without further consideration of his proposal. The Authority would be estopped from considering other factors in connection with his proposal so long as his use was allowable. . . ."

Finally, appellants contend that the adjudication below results in an unconstitutional application of the Urban Redevelopment Law. In view of the declared legislative purpose of the Act, we cannot agree with this contention. Standards for proper redevelopment of blighted areas are contained in the Act and were approved by us in the leading case of *Belovsky v. Redevelopment Authority,* 357 Pa. 329, 54 A. 2d 277 (1947). In that case, we said: "The fact is, however, that the act contains as definite a description of what

constitutes a blighted area as it is reasonably possible to express; in regard to such factors as the selection and the size of the areas to be redeveloped, the costs involved, *and the exact form which the redevelopment in any particular case is to take,* it was obviously impossible for the legislature to make detailed provisions or blueprints in advance for each operation." (Emphasis supplied). We cannot and will not substitute our judgment of what is a sound economic and social redevelopment of the subject project for that of the Authority, the Authority's judgment having been based on a proper exercise of the discretion vested in it by law.

Decrees affirmed. Each party to bear own costs.

Mr. Justice ROBERTS dissents.